IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JOHNATHON DOUGLAS, #448602, et al., | ) |
| Plaintiffs, | ) |
| v. | ) No. 3:25-cv-00472 |
| DAMON HINNINGER, et al., | ) Judge Richardson |
| | ) Magistrate Judge Frensley |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Johnathon Douglas and Kentavis Jones, who are currently in custody of the Trousdale Turner Correctional Center in Hartsville, Tennessee, filed a pro se complaint, alleging violations of their civil rights. (Doc. No. 1). They have since filed a Second Amended Complaint (Doc. No. 13). The Second Amended Complaint is now before the Court for initial review pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A.

### I. PLRA SCREENING STANDARD

Under 28 U.S.C. § 1915(e)(2)(B), the court must dismiss any portion of a civil complaint filed in forma pauperis that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. Section 1915A similarly requires initial review of any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," *id.* § 1915A(a), and summary dismissal of the complaint on the same grounds as those articulated in Section 1915(e)(2)(B). *Id.* § 1915A(b).

The court must construe a pro se complaint liberally, *United States v. Smotherman*, 838 F.3d 736, 739 (6th Cir. 2016) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), and accept

the plaintiff's factual allegations as true unless they are entirely without credibility. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007) (citing *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)). Although pro se pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), the courts' "duty to be 'less stringent' with pro se complaints does not require us to conjure up [unpleaded] allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

## II.   ALLEGED FACTS

Plaintiffs name ten Defendants in the Second Amended Complaint.[1] For purposes of the instant screening, the Court accepts as true the following facts that are alleged in the Second Amended Complaint.

In the early morning on October 15, 2024, Plaintiffs were attacked by multiple inmates in their housing unit at Trousdale Turner Correction Center. (Doc. No. 13 at 7-8). The attackers used a variety of weapons. (*Id.*) Plaintiffs reported the attack and their injuries to Captain Futrel, who wrote disciplinary reports against Plaintiffs and two other inmates for fighting. (*Id.* at 8).

At approximately 10:00 a.m. the same day, Security Threat Group ("STG") Coordinator Cunningham visited Plaintiff Jones and took pictures of his injuries. (*Id.*) Plaintiff Douglas was at

---

[1] Defendants are Damon Hinninger, CEO of Core Civic; Vince Vantell, Warden of Trousdale Turner Correction Center; Captain Elisha Futrel; STG Coordinator Justin Cunningham; Lieutenant Marquez Eckford; Lieutenant Jon Cunningham; Sergeant Madison Barnes; Sergeant Justin Lambuth; Sergeant Jacob Kramer; and Tennessee Department of Corrections Commissioner Frank Strada. (Doc. No. 13 at 1−4).

The Second Amended Complaint also names "Bill Lee Haslem" (sic), at the "State Capitol Bldg.," as a *Plaintiff*. (Doc. No. 13 at 1). There are no allegations regarding this purported individual in the body of the Second Amended Complaint. And, for that matter, there are also no allegations regarding current Tennessee Governor Bill Lee or former Tennessee Governor Bill Haslam. The Clerk is directed below to terminate "Bill Lee Haslem" as a party on the docket, which actually shows him as a Defendant even though the Second Amended Complaint listed him as a Plaintiff.

a parole hearing at that time, so STG Coordinator Cunningham visited Plaintiff Douglas later, at approximately 12:30 p.m. the same day. (*Id.* at 9). A nurse viewed Plaintiff Douglas's wounds. (*Id.*)

Plaintiffs were returned to their housing unit, where they were attacked again at approximately 6:45 p.m. the same day and forced to leave the housing unit. (*Id.* at 9−10). Plaintiffs tried to get help from Sergeant Kramer after the second incident, but he told them that the only way they would be moved is with a "Refusing Cell Assignment" disciplinary report. (*Id.* at 10). Later, Lieutenant Cunningham[2] wrote disciplinary reports against Plaintiffs for Refusing Cell Assignment. (*Id.* at 10−11).

As part of the disciplinary process, on October 18, 2024, Sergeant Barnes viewed video of the second October 15 incident and agreed that Plaintiffs did not initiate the violence. (*Id.* at 11). However, she told Plaintiffs that the charges against them would be dropped only if they agreed to return to general-population housing. (*Id.*) Plaintiffs responded that they would leave segregation only if they were housed in a safer housing unit. (*Id.* at 11−12).

Later on October 18, Lieutenant Eckford tried to transfer Plaintiffs back to general-population housing. (*Id.* at 12). Plaintiffs insisted on being sent to "Fox unit," which they believed would be safe. (*Id.*) Instead, Lieutenant Eckford escorted them to "Bravo unit." (*Id.*) However, before they were assigned cells, inmates in the unit began congregating and displaying strange behavior, so Lieutenant Eckford escorted Plaintiffs back to segregation. (*Id.* at 12−13). When they returned to the segregation housing unit, Sergeant Lambuth allowed the door to remain open in violation of security protocol. (*Id.* at 13−14). Plaintiff Douglas tried to attract the attention of Sergeant Barnes, but she was talking on the telephone and neglecting her security duties.

---

[2] Lieutenant Jon Cunningham, not to be confused with STG Coordinator Justin Cunningham.

(*Id.* at 14).³ Later, Plaintiff Douglas asked Sergeant Lambuth if the October 18 incident had been reported, and Sergeant Lambuth said that it had been reported up to Warden Vantell and CEO Hinninger. (*Id.* at 15).

On November 18, 2024, Plaintiffs received another disciplinary report for Refusing Cell Assignment. (*Id.*) The hearing officer asked STG Coordinator Cunningham to investigate Plaintiffs' situation. (*Id.*) STG Coordinator Cunningham spoke with Plaintiffs and stated that he would report the matter to Warden Vantell and CEO Hinninger. (*Id.* at 16).

At some point, Plaintiff Douglas was moved to Fox unit, but on July 7, 2025, he was returned to Delta unit, where the attacks had occurred on October 15, 2024. (*Id.* at 17).

## III.     PLAINTIFFS' CLAIMS

Plaintiffs assert that Defendants' actions violated the Eighth and Fourteenth Amendments. (*Id.*) They seek a total of $90 million in compensatory and punitive damages. (*Id.*)

## IV.     ANALYSIS

Plaintiffs have alleged facts sufficient, at least for purposes of this initial screening, to state viable Eighth Amendment failure-to-protect claims against STG Coordinator Cunningham and Captain Futrel. All other claims will be dismissed for failure to state a claim upon which relief may be granted.

A.     <u>Failure to Protect</u>

"[P]rison officials have a duty under the Eighth Amendment to protect prisoners from violence at the hands of other prisoners." *Reedy v. West*, 988 F.3d 907, 912 (6th Cir. 2021) (quotation marks omitted). "For a failure-to-protect claim to lie against a prison official, the plaintiff must show that: (1) 'objectively,' he was 'incarcerated under conditions posing a

---

³ Plaintiffs do not allege that harm came to them from the alleged carelessness of Sergeants Lambuth and Barnes.

substantial risk of serious harm' and (2) the official acted with 'deliberate indifference' to inmate safety, meaning the official was 'subjectively aware of the risk' and 'failed to take reasonable measures to abate it.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 833−34 (1994)) (brackets and citations omitted).

The Court may infer from Plaintiffs' allegations that STG Coordinator Cunningham and Captain Futrel knew about the first gang-member attack on Plaintiffs on October 15, 2024, before the second attack occurred. (Doc. No. 13 at 8−9). The Court may also infer that STG Coordinator Cunningham and Captain Futrel had the authority to reassign Plaintiffs to a new housing unit but instead allowed them to return to the same unit where they were attacked again that day. (*Id.* at 8−10). So, at least for purposes of this initial screening, Plaintiffs have therefore stated viable claims against STG Coordinator Cunningham and Captain Futrel for failure to protect them from the second October 15 attack, in violation of the Eighth Amendment.

Plaintiffs do not allege that any other Defendant was subjectively aware of their safety concerns before the second October 15 attack. Most of the remaining Defendants became aware after the second attack. (*See id.* at 10 (Sergeant Kramer and Lieutenant Cunningham), 11 (Sergeant Barnes), 12 (Lieutenant Eckford), 13 (Sergeant Lambuth), 15 (Warden Vantell and CEO Hinninger)). There are no allegations regarding when (or even whether) the remaining Defendant—then-Commissioner Strada—learned of the safety concerns. Accordingly, Plaintiffs have not alleged facts from which the Court may reasonably infer that these Defendants were deliberately indifferent to Plaintiffs' safety risk.[4] Plaintiffs have thus failed to state a viable Eighth

---

[4] To the extent Plaintiffs claim that any Defendant failed to protect them from further attacks after October 15, 2024, they have failed to state a claim upon which relief may be granted because they do not allege that any such attack took place. *See Wilson v. Yaklich*, 148 F.3d 596, 601 (6th Cir. 1998) ("[P]laintiff must allege that he has suffered or is threatened with suffering actual harm as a result of the defendants' acts or omissions before he can make any claim with an arguable basis in Eighth Amendment jurisprudence.").

Amendment claim against any Defendant other than STG Coordinator Cunningham and Captain Futrel.

B.  Due Process

"The Fourteenth Amendment prohibits any State from depriving a person of life, liberty, or property without due process of law." *Meachum v. Fano*, 427 U.S. 215, 223 (1976). "A Fourteenth Amendment procedural due process claim depends upon the existence of a constitutionally cognizable liberty or property interest with which the state has interfered." *McMillan v. Fielding*, 136 Fed. Appx. 818, 820 (6th Cir. 2005). In the prison context, an incarcerated person has a protected liberty interest, and therefore a right to due process, when facing additional punishment that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

Plaintiffs assert that several Defendants denied them (procedural) due process during disciplinary proceedings in violation of the Fourteenth Amendment. (Doc. No. 13 at 17). However, Plaintiffs do not allege facts from which the Court may infer that these disciplinary proceedings resulted in "atypical and significant hardship" to either Plaintiff. *Sandin*, 515 U.S. at 484. Accordingly, Plaintiffs have failed to state a Fourteenth Amendment claim upon which relief may be granted.

### V.     MOTION TO APPOINT COUNSEL

Plaintiff Douglas has filed a Motion to Appoint Counsel. (Doc. No. 14). The Supreme Court has held that "an indigent's right to appointed counsel . . . exists only where the litigant may lose his physical liberty if he loses the litigation." *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 25 (1981). Thus, unlike in criminal proceedings, there is no constitutional right to an appointed counsel in a civil action, such as this action. *Willett v. Wells*, 469 F. Supp. 748, 751

(E.D. Tenn. 1977), *aff'd*, 595 F.2d 1227 (6th Cir. 1979); *see Williamson v. Autorama, Inc.*, No. 91-5759, 947 F.2d 947 (6th Cir. 1991) (citing *Willett* favorably). The appointment of counsel for a civil litigant is a matter within the discretion of the district court and will occur only under exceptional circumstances. *Lavado v. Keohane*, 992 F.2d 601, 604−05 (6th Cir. 1993).

In his Motion to Appoint Counsel, Plaintiff Douglas asserts that "the facility in which the Plaintiff is presently incarcerated is run and operated by Corrections Corporation of America (CCA), and as such, does not provide for direct access to legal materials; rather through contractual services provided by a Contractual CCA Attorney." (Doc. No. 14 at 2). Plaintiff does not explain how this contractual arrangement prevents him from litigating this action on his own. Accordingly, Plaintiff Douglas's Motion to Appoint Counsel (Doc. No. 14) will be denied without prejudice.

## VI. CONCLUSION

The court has screened the Second Amended Complaint pursuant to the PLRA and finds that the Complaint fails to state a Section 1983 claim upon which relief can be granted against Defendants Damon Hinninger, Warden Vince Vantell, Lieutenant Jon Cunningham, Lieutenant Marquez Eckford, Sergeant Madison Barnes, Sergeant Justin Lambuth, Sergeant Jacob Kramer, and Commissioner Frank Strada. All claims against these Defendants are therefore **DISMISSED** for failure to state a claim upon which relief may be granted. The Clerk is **DIRECTED** to terminate these Defendants, as well as "Bill Lee Haslem," on the docket.

The Court finds that for purposes of this initial screening, the Second Amended Complaint states viable Eighth Amendment claims against STG Coordinator Justin Cunningham and Captain Elisha Futrel. Those claims **SHALL PROCEED**. This finding does not preclude either of these Defendants from filing a motion to dismiss on any grounds contemplated by Rule 12 of the Federal Rules of Civil Procedure.

The Clerk is **DIRECTED** to send the plaintiff a service packet (a blank summons (AO 440) and USM 285 form) for Defendants Justin Cunningham and Captain Elisha Futrel. Plaintiffs **MUST** complete the service packet and return it to the Clerk's Office within **30 DAYS** of the entry of this order. Failure to do so may result in the dismissal of this case. Upon return of the properly completed service packet, the Clerk is **DIRECTED** to issue summons to the U.S. Marshals Service for service on the Defendants. Fed. R. Civ. P. 4(b) and 4(c)(3).

Pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B), this action is **REFERRED** to the Magistrate Judge to enter a scheduling order for the management of the case, to dispose or recommend disposition of any pre-trial, non-dispositive motions, to issue a Report and Recommendation on all dispositive motions, and to conduct further proceedings, if necessary, under Rule 72(b), Fed. R. Civ. P., and the Local Rules of Court. Despite the issuance of process, the Magistrate Judge may *sua sponte* recommend the dismissal of any claim for the reasons set forth in 28 U.S.C. § 1915(e)(2).

Plaintiffs are warned that this action may be dismissed if they fail to keep the Clerk's Office informed of their current addresses.

Plaintiff Douglas's Motion to Appoint Counsel (Doc. No. 14) is **DENIED** without prejudice.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE